**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANDREW ZAYAC,<br>    Petitioner, | | CIVIL ACTION NO.<br>3:16-CV-952 (JCH) |
| v. | | |
| UNITED STATES OF AMERICA,<br>    Respondent. | | JANUARY 5, 2018 |

**RULING RE: MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. § 2255 (DOC. NO. 1)**

## I.    INTRODUCTION

The petitioner, Andrew Zayac, filed a Motion to Vacate, Set Aside or Correct

Sentence pursuant to section 2255 of title 28 of the United States Code on June 17,

2016.  See Motion to Vacate, Set Aside or Correct Sentence ("Mot. to Vacate") (Doc.

No. 1).  Zayac argues that his trial counsel was ineffective for failing to advise him of

statements made by the court during a charge conference regarding the requested

duress instruction and for failing to call witnesses to rebut the government's theory of

motive.  See Memorandum of Law in Support of Motion to Vacate ("Mem. in Supp.")

(Doc. No. 1-2) at 2.  He also argues that his right to be present at a critical stage in the

proceeding was violated because he was absent from the charge conference where the

court discussed the potential impact of his testimony on whether a duress instruction

would be given.  See id.  The respondent, the United States ("the Government"),

opposes Zayac's Motion.  See Respondent's Memorandum of Law in Opposition to

Petitioner's § 2255 Motion ("Mem. in Opp.") (Doc. No. 11)

For the reasons set forth below, Zayac's Motion to Vacate is **DENIED**.

1

## II.    BACKGROUND

On December 16, 2010, a federal grand jury returned the Second Superseding Indictment, charging Andrew Zayac and Heriberto Gonzalez with the following counts: kidnapping resulting in death (Count One), premeditated murder (Count Two), felony murder (Count Three), interference with commerce by robbery (Count Four), possession of marijuana with intent to distribute (Count Five), use of a firearm during and in relation to a narcotics trafficking offense (Count Six), conspiracy to use or possess a firearm in furtherance of crimes of violence and a narcotics trafficking offense (Count Seven), destruction/concealment of evidence (Counts Eight, Nine, and Ten), and conspiracy to destroy/conceal evidence (Count Eleven).  See United States v. Zayac, No. 3:09-CR-00136-JCH-1 ("Zayac Criminal Docket"), Second Superseding Indictment (Doc. No. 158).

Trial for the case began on July 14, 2011.  See Zayac Criminal Docket, Minute Entry (Doc. No. 253).  Zayac's counsel at trial included Bruce D. Koffsky and Martin J. Minnella.  The court has previously described the trial evidence against Zayac as follows:

> At trial, the government presented evidence to support the following facts.  Zayac arranged a transaction with the victim, Edward Rivera, whereby Zayac would take delivery of approximately 70 pounds of marijuana.  . . . On February 8, 2009, Zayac drove a blue Jeep Grand Cherokee to pick up Rivera from his apartment in the Bronx at approximately 11:42pm.  Rivera transported the marijuana in two duffle bags, which were loaded into Zayac's Jeep.  One witness testified that he saw silhouettes or shadows of people in both the driver and passenger side of the vehicle when Rivera got into the car.  Rivera was shot twice, and died, in the backseat of Zayac's Jeep.  Zayac, with Gonzalez as a passenger, then drove the Jeep to the Padanaram Reservoir in Danbury, CT. Rivera's body was removed from the backseat of the Jeep and

> concealed at the bottom of a steep hill behind several rocks and trees.
>
> Zayac and Gonzalez then drove to the New Rochelle residence of Zayac's girlfriend, Stephanie DiBuono, where Zayac removed the marijuana and stored it in DiBuono's Cadillac. Zayac and Gonzalez then drove to Gonzalez's apartment in the Bronx and picked up Gonzalez's Mercedes-Benz. Gonzalez and Zayac drove to a gas station to purchase gasoline, and set Zayac's Jeep on fire, torching all evidence in the Jeep and burning both defendants. . . .

United States v. Zayac, No. 3:09-CR-00136 (JCH), 2011 WL 5238823, at *1 (D. Conn. Nov. 1, 2011).

At trial, Zayac's defense "focused on his attempt to pin responsibility for the crimes on Gonzalez." United States v. Zayac, 765 F.3d 112, 116 (2d Cir. 2014). Zayac did not testify at trial. See id.; Zayac Criminal Docket, Transcript Day 4 ("Day 4 Tr.") (Doc. No. 291) at 1200–01. However, his versions of what happened was presented at trial through government witnesses, who recounted what Zayac had told investigators on four different occasions. See Zayac, 765 F.3d at 116. His account of the events changed each time. Id. The Second Circuit described Zayac's version[1] of the events as follows:

> According to Zayac, sometime after Rivera got into the Jeep, Gonzalez produced a small semiautomatic handgun from his backpack, along with some zip ties. Gonzalez then ordered Rivera at gunpoint to put the zip ties on himself. Moments later, as Zayac drove the vehicle northward, Gonzalez shot Rivera in the chest. Gonzalez then told Zayac to be happy it was not him who was shot. Once near the Padanaram Reservoir in Danbury, Zayac turned down a secluded road and stopped on the shoulder. Gonzalez insisted that Zayac help him pull Rivera's body from the car. Zayac told investigators that he then returned to the driver's seat of the Jeep while Gonzalez disappeared down the roadside hill with

---

[1] The Second Circuit notes in its discussion of the court's duress charge decision that the court focused "on the fourth and final meeting, a proffer session on December 16, 2010, which Zayac attended with four defense attorneys." Zayac, 765 F.3d at 120.

the body for several minutes. When Gonzalez reappeared, the two men drove back to New York, where they proceeded to stow the marijuana at the home of Zayac's girlfriend before burning the Jeep.

Id.

Relying on this version of the events, Mr. Koffsky requested, on Zayac's behalf, a duress charge as to Count One for kidnapping, Count Four for robbery, and Counts Eight through Eleven relating to destruction or concealment of evidence. See Zayac Criminal Docket, Transcript Day 5 ("Day 5 Tr.") (Doc. No. 292) at 1207. To invoke a duress defense, Zayac had to present evidence of "(1) a threat of force directed at the time of the defendant's conduct; (2) a threat sufficient to induce a well-founded fear of impending death or serious bodily injury; and (3) a lack of a reasonable opportunity to escape harm other than by engaging in the illegal activity." Zayac, 2011 WL 5238823, at *4 (quoting United States v. Gonzalez, 407 F.3d 118, 122 (2d Cir. 2005)). The court declined to instruct the jury on duress in Zayac's case because it found that, even accepting Zayac's versions of the events told through the government's witnesses, Zayac had a reasonable opportunity to escape. See Day 5 Tr. at 1214, 1241–43. Specifically, the court found that Zayac could have escaped when he was in the car alone at the top of the embankment while Gonzalez was disposing of the body. See id. at 1214–16.

On November 22, 2011, the jury convicted Zayac of Counts One (kidnapping), Three (felony murder), Four (robbery), Five (possession with intent to distribute marijuana), Seven (conspiracy to use or possess a firearm in furtherance of violent crimes or a narcotics trafficking offense), Eight to Ten (destruction/concealment of evidence), and Eleven (conspiracy to destroy/conceal evidence). See Zayac Criminal Docket, Jury Verdict (Doc. No. 269). Zayac was found not guilty of Count Two for premeditated

murder.[2]  See id.  Zayac then filed a Motion for Acquittal and a Motion for a New trial on August 2, 2011.  See Zayac Criminal Docket, Motion for a New Trial and Motion for Judgment of Acquittal (Doc. No. 274).  He argued, inter alia, that the court erred in not sending the duress charge to the jury.  See Zayac Criminal Docket, Memorandum in Support of Motion for Acquittal and for New Trial (Doc. No. 285) at 10–13.  The court denied the Motion.  See Zayac, 2011 WL 5238823.

On November 21, 2011, the court sentenced Zayac to life imprisonment on Counts One and Three; 20 years each on Counts Four, Seven, Eight, Nine, and Ten; and five years on Counts Five and Eleven, all to run concurrently.  See Zayac Criminal Docket, Judgment (Doc. No. 324).

On November 23, 2011, Zayac appealed the judgment to the Second Circuit.  See Zayac Criminal Docket, Notice of Appeal (Doc. No. 326).  He again argued, inter alia, that the court erred in denying his request for a duress instruction.  See Zayac, 765 F.3d at 119–20.  The Second Circuit affirmed the court's judgment, holding that "no rational juror could have found that Zayac lacked a reasonable opportunity to escape," and that this opportunity occurred before the kidnapping and robbery were complete.  Id. at 121–23.

After the Supreme Court decided Yates v. United States, 135 S. Ct. 1074 (2015), the parties filed a Joint Motion to Dismiss Counts Eight Through Eleven, which the court granted.  See Zayac Criminal Docket, Joint Motion to Dismiss Counts Eight Through Eleven (Doc. No. 349); Zayac Criminal Docket, Order Granting Motion to Dismiss (Doc. No. 350).

---

[2] Count Six for use or possession of a firearm in furtherance of violent crimes or a narcotics trafficking offense was dismissed.  See Zayac Criminal Docket, Judgment (Doc. No. 324).

Zayac filed the current Motion to Vacate on June 17, 2016, requesting the court to vacate his conviction and grant him a new trial.  <u>See</u> Mot. to Vacate.  He raises two claims of ineffective assistance of counsel and one claim of violation of his right to be present at a critical stage of the proceedings.  <u>See</u> Mem. in Supp.

## III.  LEGAL STANDARD

"Because collateral challenges are in tension with the society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." <u>Yick Man Mui v. United States</u>, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted).  Section 2255 of title 28 of the United States Code permits a federal prisoner to move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (2016).  Therefore, relief is available "under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  <u>Cuoco v. United States</u>, 208 F.3d 27, 30 (2d Cir. 2000) (quoting <u>United States v. Bokun</u>, 73 F.3d 8, 12 (2d Cir. 1995)).

The petitioner bears the burden of proving he is entitled to relief by a preponderance of the evidence.  <u>See</u> <u>Skaftouros v. United States</u>, 667 F.3d 144, 158 (2d Cir. 2011).  In deciding a section 2255 motion, the court must hold a hearing, "unless the motion and the files and records of the case conclusively show that the plaintiff is entitled to no relief."  28 U.S.C. § 2255(b).  However, a petitioner is not

automatically entitled to a hearing, and no hearing is required where a petitioner's "allegations are 'vague, conclusory, or palpably incredible.'" <u>Gonzalez v. United States</u>, 722 F.3d 118, 130 (2d Cir. 2013) (quoting <u>Machibroda v. United States</u>, 368 U.S. 487, 495 (1962)).  To determine whether a prisoner is entitled to an evidentiary hearing on the motion, the court looks "primarily to the affidavit or other evidence proffered in support of the application in order to determine whether, if the evidence should be offered at a hearing, it would be admissible proof entitling the petitioner to relief." <u>LoCascio v. United States</u>, 395 F.3d 51, 57 (2d Cir.2005) (quoting <u>Dalli v. United States</u>, 491 F.2d 758, 760 (2d Cir.1974)).  "The petitioner must set forth specific facts which he is in a position to establish by competent evidence." <u>Id.</u> (quoting <u>Dalli</u>, 491 F.2d at 761).

## IV. DISCUSSION

In his Motion, Zayac presents three grounds for vacating his sentence.  First, Zayac argues that his Fifth Amendment due process and confrontation rights, as well as his Sixth Amendment right to a fair trial, were violated because he was not present at a charge conference in which the court expressed that it could not make a decision with respect to the duress charge until after hearing his testimony.  <u>See</u> Mem. in Supp. at 2. Second, he argues that trial counsel rendered ineffective assistance in violation of the Sixth Amendment right to counsel by failing to inform him of those statements made by the court during the charge conference.  <u>See id.</u>  Zayac argues that the statement indicated that the court's decision whether or not to instruct the jury on duress depended on his testimony, and that, had he been aware of the court's view, he would have testified at trial.  <u>See id.</u>  Finally, he argues that trial counsel was also ineffective for failing to call three available witnesses to rebut the government's theory of his motive.  <u>See id.</u>

A.    Right To Be Present at a Critical Stage

Zayac argues that his constitutional right to be present at a critical stage of the trial was violated because he was absent during a charge conference in which the court made "rulings bearing on Mr. Zayac's Fifth Amendment right to testify."  Mem. in Supp. at 13.  Specifically, Zayac argues that he had a right to be present "to hear the Court's view that a duress instruction could more likely be granted if he testified."  Id.  At the charge conference, which occurred before the government rested, Mr. Koffsky indicated that the defense would be requesting a jury instruction on duress.  See Zayac Criminal Docket, Transcript Day 3 ("Day 3 Tr.") at 779.  The court responded that it would have to hear Zayac's testimony before determining whether or not sufficient evidence had been raised to permit a duress charge to go to the jury.[3]  See Day 3 Tr. at 791–807.

---

[3] Zayac highlights a number of statements made by the court and Mr. Koffsky, including, inter alia:

> THE COURT: "I'm going to try to think in the context I haven't heard Mr. Zayac's testimony obviously.  So first of all, I guess I have to hear his testimony to see whether he raises it.  i.e. he provided evidence which would support the three elements. . . . it strikes me the defendant raises it by coming forward with something, then it shifts to the government. . . . In this case, it would strike me maybe I'm mistaken, you will correct me if I am, that the defense is raised solely by Mr. Zayac's testimony."  (Tr. at 791–92).

> THE COURT: "I'm not going to say I'm not going to believe Mr. Zayac. I haven't heard him."  (Tr. at 793).

> MR. KOFFSKY: "We don't have any independent information [on duress] other than our client's testimony and maybe some recordings which the court didn't want us to go into with Ms. DiBuono."  (Tr. at 794).

> THE COURT: **"I will have to hear the testimony play out."**  (Tr. at 796).

> . . .

> MR. KOFFSKY: "I think we're going to talk to him tonight."  (Tr. at 806).

> THE COURT: "We'll take a look at duress.  The government as well.  If we get a chance tomorrow to spend a few minutes once I read some of the cases it probably has to await Mr. Zayac testifying but I will certainly look

Zayac's Motion characterizes the court's statements as a "preliminary ruling." <u>See</u> Mem. in Supp. at 5, 7.

In response, the Government makes three arguments. First, the Government contends that Zayac did not have a due process right to be present at the charge conference. <u>See</u> Mem. in Opp. at 15–17. Second, the Government argues that Zayac cannot show actual prejudice. <u>See id.</u> at 18. Finally, the Government argues that Zayac waived this claim because he failed to raise it on direct appeal. <u>See id.</u> at 17–18. The court agrees with the Government's first argument that Zayac's due process rights were not violated by his absence at the charge conference, and therefore, it is not necessary for the court to address the Government's remaining two arguments.

The Due Process Clause protects a criminal defendant's right to be present "at any stage that is critical to the outcome of the trial and if his presence would contribute to the fairness of trial." <u>Monroe v. Kuhlman</u>, 433 F.3d 236, 246 (2d Cir. 2006); <u>see also Jones v. Murphy</u>, No. 3:10-CV-49, 2010 WL 3829129, at *9 (D. Conn. Sept. 21, 2010), <u>aff'd</u>, 694 F.3d 225 (2d Cir. 2012). The Supreme Court has defined a critical stage as one in which the defendant's "presence has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge." <u>United States v. Gagnon</u>, 470 U.S. 522, 526 (1985). Thus, due process requires the defendant's presence "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." <u>Id.</u> The defendant's presence is not required "when presence would be useless,

---

at the cases before he testifies so I have some sense of the issue." (Tr. at 807).

Mem. in Supp. at 4 (emphasis in original).

or the benefit but a shadow." <u>Kentucky v. Stincer</u>, 482 U.S. 730, 745 (1987) (quoting <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 106–107 (1934)).

The Second Circuit has held that proceedings involving only questions of law are not critical stages triggering the defendant's due process rights. <u>See</u> <u>United States v. Rubin</u>, 37 F.3d 49, 54 (2d Cir. 1994); <u>United States v. Rivera</u>, 22 F.3d 430, 438–49 (2d Cir. 1994); Fed. R. Crim. P. 43(b)(3) (stating that the "defendant need not be present" if "[t]he proceeding involves only a conference or hearing on a question of law"). Following this rule, the Second Circuit has made clear that the Due Process Clause does not require the defendant's presence "at a charge conference dealing only with the legal questions involved in formulating a proper set of jury instructions." <u>Rubin</u>, 37 F.3d at 54; <u>see also</u> <u>United States v. Greenidge</u>, 199 F.3d 1324 (Table), at *1 (2d Cir. 1999); <u>Salley v. Graham</u>, No. 07CIV455 (GEL), 2008 WL 818691, at *4 (S.D.N.Y. Mar. 27, 2008); <u>Coke v. Superintendent, Green Haven Corr. Facility</u>, No. 06-CV-811 (MAT), 2010 WL 475274, at *5 (W.D.N.Y. Feb. 5, 2010). This is because "[t]he content of the instructions to be given to the jury is purely a legal matter, and a conference to discuss those instructions is thus a conference on a question of law at which a defendant need not be present." <u>Rivera</u>, 22 F.3d at 438–49.

As Zayac's argument turns on his absence from a charge conference, the court finds that he had no right under the Due Process Clause to be present at the conference and, therefore, that his due process rights were not violated.

Zayac makes two attempts to argue that a due process right can require a defendant's presence at a charge conference. First, he relies on Fourth Circuit precedent in <u>United States v. Rhodes</u>, 32 F.3d 867 (4th Cir. 1994). <u>See</u> Mem. in Supp.

at 12–13.  He argues that Rhodes interpreted Supreme Court precedent in Rogers v. United States, 422 U.S. 35, 39–40 (1975), to indicate that the defendant's absence from discussion on jury instructions can implicate his due process rights.  See Mem. in Supp. at 12–13 (quoting Rhodes, 32 F.3d at 873 ("Gregorio['s holding] that the defendant has no right to be present at an in-chambers discussion on jury instructions, [has] been implicitly overruled by the Supreme Court's holding in Rogers.")).

The court is unpersuaded by Zayac's argument.  While the Supreme Court's holding in Rogers is binding on this court, Rogers does not speak to the facts in this case.  In Rogers, the Supreme Court held that the court erred in unilaterally answering a note sent to the judge by the jury during deliberations.  See Rogers, 422 U.S. at 36. Thus, both the defendant and his counsel were not informed of or given an opportunity to object to the court's response to the note.  See id.  Rogers does not answer whether the defendant's due process rights would still have been violated if the defendant's counsel were present, but the defendant were not.

Additionally, Rogers and Rhodes are also distinguishable from the facts in this case for another reason.  Both Rogers and Rhodes involved the court's response to a note sent by the jury to the judge during jury deliberations.  See Rogers, 422 U.S. at 36; Rhodes, 32 F.3d at 873 ("The narrow question presented in this case—whether the defendant, and not merely defense counsel, must be present when an answer to a jury question sent out during deliberations is formulated and given—is one which also is controlled by Rogers.").  Zayac is challenging instead an initial charge conference that occurred before the court made a ruling on his duress charge and before any final instructions were given to the jury.

The Rhodes decision extended the conclusion in Rogers to hold that the defendant had a right to be present during "an in-chambers discussion with counsel for the government and the defendant about a substantive question with respect to its instructions sent out by a deliberating jury." Rhodes, 32 F.3d at 874. Unlike Rogers, however, the Fourth Circuit's holding in Rhodes is not binding on this court. Zayac has not pointed the court to any Second Circuit precedent reading or extending Rogers in the same way. To the contrary, Second Circuit precedents have emphasized the need for the judge to consult with counsel in responding to communications from the jury. See United States v. Mejia, 356 F.3d 470, 475 (2d Cir. 2004); United States v. Ronder, 639 F.2d 931, 934 (2d Cir. 1981). At least one district court in this Circuit has reached the opposite conclusion from that of the Fourth Circuit in Rhodes. See Pellington v. Greiner, 307 F. Supp. 2d 601, 607 (S.D.N.Y. 2004), aff'd, 132 Fed. App'x 868 (2d Cir. 2005) ("There is no indication that if the court informs counsel of the communication from a juror and consults with counsel about the appropriate response, the court has nonetheless materially violated the defendant's constitutional rights by failing to also include him personally in the discussion, particularly when the defendant is aware of the conference and knows that his attorney is participating in the colloquy."). Thus, the court declines to adopt Zayac's reading of Rogers and Rhodes.

Additionally, even if the court were in agreement with the Rhodes decision, it, like Rogers, involves a jury note during deliberations, not a conference as to what the jury charge should be at the close of evidence.

Second, Zayac attempts to distinguish his case from the existing Second Circuit precedent by arguing that the charge conference went beyond purely legal matters.

See Mem. in Supp. at 13–14.  He argues that the court's statements regarding the potential impact of his testimony on the court's decision to instruct the jury on duress were a preliminary ruling that considered evidentiary and factual issues.  See id.  He contends that, had he been present, he would have been able to understand the court's "ruling" and contribute to his defense.  See id. at 14.

The court notes first that Zayac mischaracterizes the statements made at the charge conference by referring to them as a "preliminary ruling."  At no point during the charge conference did the court make a "preliminary ruling" on the defense's request for a duress instruction.  Nor did the court order Zayac to testify or state that it would only send a duress instruction to the jury if Zayac testified.  Rather, the court's statements merely reflect an unwillingness to make a ruling on the duress instruction on the record then before the court before hearing Zayac's testimony.[4]

Even if the statement was a preliminary ruling, however, the Second Circuit's rulings on charge conferences still govern and preclude Zayac from prevailing on his due process argument.  The court's statement about the potential significance of Zayac's testimony to its decision of whether to give a duress charge to the jury does not transform a conference on purely legal issues into one at which the defendant has a

---

[4] For example, the court stated, "I'm trying to think in the context I haven't heard Mr. Zayac's testimony obviously.  So first of all, I guess I have to hear his testimony to see whether he raises it."  Day 3 Tr. at 791.  That statement was made in the context of a discussion illustrating which party bears the burden of proof in establishing whether a duress charge should be given or not, not as a preliminary ruling.  See id. at 791–93 ("I'm not saying I'm not going to believe Mr. Zayac.  I haven't heard him.  I'm trying to think about how the defense plays out in the case when you talk about the government having the burden of proof beyond a reasonable doubt as to what?  That it wasn't duress.").  At that stage of the trial, the defense had just raised the possibility of requesting a duress charge, and the government had not yet rested, so no defense evidence had been put on.  Therefore, the Government is correct in arguing that the court's statements as to the need to hear Zayac's testimony rely on Koffsky's assertions that Zayac's testimony will be the basis for the charge.  See id. at 793 ("MR. KOFFSKY: 'I think this case comes down to the defendant's testimony.'").  Thus, the court was not making a preliminary ruling that Zayac's testimony was necessary for the duress charge, but merely reacting to Koffsky's indication that Zayac's testimony would alone lay the evidentiary foundation for the charge.

13

due process right to be present. Merely considering the sufficiency of the evidence does not turn a purely legal conference into a critical stage for due process purposes.

If that were the case, nearly all defendants would have a due process right to be present at their charge conferences. The standard for determining whether an instruction on an affirmative defense can go to the jury is whether the defense has "a foundation in the evidence." United States v. Gonzalez, 407 F.3d 118, 122 (2d Cir. 2005) (quoting United States v. Podlog, 35 F.3d 699, 704 (2d Cir. 1994)). Thus, at any charge conference in which the court considers an affirmative defense, the court must consider the sufficiency of the evidence presented or to be presented. Based on that evidence, the court determines, as a matter of law, whether to advance the charge to the jury. Zayac has therefore identified nothing unique about the charge conference in his case. Cf. Perez v. McGinnis, No. 96-CV-5868(ARR), 1999 WL 1021818, at *10 (E.D.N.Y. Jan. 4, 1999) ("Though the petitioner characterizes the conference as entertaining arguments on factual as well as legal issues, the record demonstrates that the conference dealt with purely legal questions regarding the proper language of a limiting instruction and the legal significance of the testimony of a prior witness." (citations omitted)). The distinction that Zayac proposes to draw would swallow the Second Circuit's rule characterizing charge conferences as proceedings concerning purely legal questions to which the defendant's due process rights do not apply.

Rather, Zayac's due process rights were protected by the fact that he was present at the admission of the evidence during trial, the cross-examination of the witnesses, the giving of instructions by the court to the jury, and the other critical stages of the trial. He does not dispute his presence at these stages. Because the Due

Process Clause did not further confer a right to be present when the court first considered the legal question of whether the evidence would be sufficient to warrant a jury instruction on duress, Zayac's absence at the charge conference did not violate his due process rights.

Accordingly, Zayac's Motion to Vacate on due process grounds is denied.

B.    Ineffective Assistance of Counsel

1.    Legal Standard

A petitioner claiming ineffective assistance of counsel must satisfy a two-prong test under Strickland v. Washington, 466 U.S. 668, 687–88 (1984).  First, he must demonstrate that his counsel's performance "fell below an objective standard of reasonableness."  Id. at 688; see also United States v. Abad, 514 F.3d 271, 275 (2d Cir. 2008).  Second, he must show that he was actually prejudiced as a result of counsel's deficient performance.  See Strickland, 466 U.S. at 687, 692; see also Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012).

Under the first prong, the petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); see also Gjuraj v. United States, No. 3:12-CV-1686, 2013 WL 3540986, at *4 (D. Conn. July 10, 2013).  The Second Circuit has described the petitioner's burden as "a heavy one because, at the first step of the analysis, [a court] 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  Harrington, 689 F.3d at 129 (quoting Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011)).  "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all

the circumstances, and the standard of review is highly deferential." Kimmelman, 477 U.S. at 381.

Under the second prong, to show prejudice, a petitioner must establish "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). Strickland defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. As such, prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

### 2. Failure to Advise Defendant of Court's Statement Regarding Duress Charge

Addressing the first prong of Strickland, Zayac argues that his trial counsel's performance fell below an objective standard of reasonableness because Mr. Koffsky and Mr. Minella failed to inform him of the statements discussed above that were made by the court during the charge conference at which Zayac was not present. See Mem. in Supp. at 6–7. As noted above, Zayac characterizes the court's statements as a preliminary ruling indicating "the Court's view that a duress instruction could more likely be granted if he testified."[5] Id. at 13. In his Affidavit, Zayac now claims that his attorneys never informed him of these statements. Mem. in Supp. Ex. A at ¶ 3. He argues that effective representation requires counsel to "consult with the client regarding important decisions," including the defendant's decision whether or not to

---

[5] See footnote 3 for examples of the statements that Zayac argues should have been communicated to him.

testify.  Mem. in Supp. at 5–6 (quoting <u>Florida v. Nixon</u>, 543 U.S. 175, 187 (2004)).  He further argues that counsel's failure to do so interfered with his right to testify in his own defense because his waiver of that right was not made knowingly.  <u>See id.</u> at 6–7.

Addressing the second prong of <u>Strickland</u>, Zayac then argues that he was prejudiced by his counsel's failure to inform him of the court's view because, had he known, he would have testified.  <u>See</u> Mem. in Supp. Ex. A at ¶ 3 ("Had I known that Judge Hall said that she would charge the jury on duress but only upon hearing and evaluating my testimony, I would have testified in my own defense to address the judge's position.").  He frames the prejudice as the fact that he "was denied the opportunity to participate fully in his own defense and denied the right to a fair trial."  Petitioner's Memorandum of Law in Reply to Motion to Vacate ("Mem. in Reply") (Doc. No. 20) at 6.[6]

According to Zayac's Affidavit, his testimony would have differed from the versions of his account given to investigators in the following ways.[7]  Zayac claims he

_____

[6] Zayac also states, "There is extreme prejudice, a fundamental error equivalent to the 'right of trial itself,' when a defendant is absent at a critical stage of the proceedings."  Mem. in Reply at 6.  This argument, however, confuses his claim of ineffective assistance of counsel with his claim of his right to be present at a critical stage of the proceedings.  Here, he argues that counsel was ineffective for failing to inform him of the court's statements, not for failing to ensure his presence at the charge conference.  Therefore, his absence at the charge conference is not a basis for finding prejudice under the second prong of <u>Strickland</u> here.

[7] For comparison, the Second Circuit described the government witnesses' testimony of Zayac's account as follows:

> Zayac described sitting alone in the driver's seat of the Jeep for several minutes as Gonzalez dragged Rivera's body out of sight down a hillside just over a guardrail adjoining the road.  In a prior conversation with investigators, Zayac indicated that the murder weapon remained with him in a backpack as he waited for Gonzalez to return.  The district court concluded that these minutes alone in the car constituted a reasonable opportunity to escape as a matter of law.

was in the car alone for "perhaps thirty seconds but no more than a minute," rather than several minutes, as government witnesses testified at trial. Mem. in Supp. Ex. A at ¶ 5. His Affidavit also states that Gonzalez took the gun with him instead of leaving it in the car, and that the car lights were not on, so he could not see how far Gonzalez was from the vehicle. See id. He claims that "the key to the car was in the ignition, but the car was not running," so "I did not have a safe or reasonable option of starting the car and turning on the lights without knowing how far Gonzalez was from me." Id. He contends that this testimony would have been sufficient evidence to advance a duress instruction to the jury and, therefore, that he was prejudiced by his counsel's error, which led to his decision not to testify. See Mem. in Supp. at 8–9; Mem. in Reply at 6.

Before addressing the merits of Zayac's argument, the court first addresses Zayac's request for discovery and an evidentiary hearing on this claim. See Mem. in Reply at 2–4. Section 2255 requires the court to grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b) (2016). "If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). However, "a hearing is not required 'where the allegations [in a petitioner's § 2255 motion] are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." United States v. Seiser, 112 F.3d 507 (Table), at *2 (2d Cir. 1996) (quoting United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970)).

Zayac points out several disputed issues of fact that he claims warrant a hearing.

_____

Zayac, 765 F.3d at 120.

First, he argues that the sequence of events and the circumstances surrounding his moments alone in the car are in dispute, such as the length of time he was alone and the location of the gun. <u>See</u> Mem. in Reply at 2. Zayac argues that both he and Gonzalez should have an opportunity to testify at the hearing to clarify these facts. <u>See</u> <u>id.</u> at 3. His testimony would also address the issue of his credibility after cross-examination. <u>See</u> <u>id.</u> at 4. However, the task before the court is not to determine what in fact happened when Zayac was alone in the car or to re-litigate the denial of the duress charge, which the Second Circuit considered and affirmed on direct appeal. Rather, the relevant inquiry is whether Zayac's counsel erred in failing to convey to Zayac the court's statements during the charge conference. To that end, Zayac's "disputed facts" are immaterial.

Second, he argues that the "prospective states of mind of both the district court and Zayac's trial counsel" are also disputed. <u>Id.</u> at 2. However, as to the court, it is not the court's state of mind that is relevant, but rather, the statements made by the court at the charge conference, which are available in the trial transcript. At most, counsel is responsible to the defendant for what the court communicated to counsel, not for guessing what the court may have been thinking at the time. Finally, as to counsel's state of mind, Zayac argues that a hearing is necessary to determine what information was or was not communicated to him by counsel and counsel's reasons for doing so. <u>See</u> <u>id.</u> at 2–3. In this regard, however, the court assumes the facts alleged by Zayac— that counsel did not inform him of the court's statements. For factual issues not addressed in any affidavit, the court further assumes the unknown facts are those favorable to the petitioner. For example, while it is unknown to what extent counsel

discussed the interpretation of the colloquy in open court about the duress charge, for example, see id. at 3, the court proceeds with its analysis as though counsel did not discuss the implications of the court's statements with Zayac at all. Even assuming the facts in favor of Zayac, however, counsel's conduct does not fall below the objective standard of reasonableness for the reasons stated below. Therefore, the disputed factual issues identified by Zayac are immaterial, as his allegations are insufficient in law, and no evidentiary hearing is required. As explained below, the petition, briefings, and record before the court are sufficient to show that Zayac is not entitled to habeas relief. See 28 U.S.C. § 2255(b).

Having denied Zayac's request for an evidentiary hearing, the court proceeds to consider the merits of his Sixth Amendment claim, assuming, arguendo, the facts in favor of Zayac. The court recognizes that "[a] defendant in a criminal case has the constitutional right to testify on his own behalf." Rega v. United States, 263 F.3d 18, 21 (2d Cir. 2001) (citing Rock v. Arkansas, 483 U.S. 44, 49–51 (1987)). The Second Circuit has held that "trial counsel's duty of effective assistance includes the responsibility of advising the defendant concerning his right to testify." United States v. Murray, 414 Fed. App'x 318, 321 (2d Cir. 2011) (citing Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997)). Accordingly, courts in this Circuit have held that the first prong of Strickland can be met if counsel fails to inform the defendant that he has the right to testify and that the ultimate decision whether or not to do so belongs to the defendant. See Christie v. United States, No. 08 CR 1244 RWS, 2014 WL 2158432, at *11 (S.D.N.Y. May 23, 2014); DeLuca v. Lord, 858 F. Supp. 1330, 1356, 1360 (S.D.N.Y. 1994), aff'd, 77 F.3d 578 (2d Cir. 1996).

However, here, Zayac has not claimed—nor is there any evidence that—his trial counsel failed to inform him of his right to testify or to discuss the advantages or disadvantages of testifying with him before he waived his right. To the contrary, at the time of his waiver, Zayac's colloquy with the court indicated that he waived his right to testify knowingly, intelligently, and voluntarily. See Day 5 Tr. at 1200–01. Zayac represented to the court that he understood that he had the right to testify even if his lawyers advised against it. See id. He further stated that he had been talking to his lawyers every day, that his lawyers had discussed the "pros and cons" of testifying with him, and that he had weighed those considerations himself before deciding not to testify. See id. Zayac's Affidavit does not contradict these statements. His Affidavit instead states, "At no time during trial did I ever learn nor was I ever told that Judge Hall had told the lawyers that instructing the jury on duress depended on her Honor hearing and evaluating my testimony." Mem. in Supp. Ex. A at ¶ 3. Neither Zayac nor the Government obtained an Affidavit from Mr. Koffsky or Mr. Minnella. Therefore, the court acknowledges that it has an incomplete picture of what was actually discussed between Zayac and his attorneys. The current evidence before the court indicates that trial counsel consulted with Zayac regarding his right to testify and the pros and cons of doing so, but did not convey to him the statements of the court at the charge conference in question. It is not clear, however, from the available affidavits whether the pros and cons discussed by counsel included his assessment of the duress charge more generally.

Even assuming, arguendo, as the court must absent counsels' testimony, that counsel's advice regarding his decision to testify did not touch on the implications for his

duress charge at all, the court finds nonetheless that trial counsel's conduct did not fall below the objective standard of reasonableness.[8]  Courts in other circuits have held that a defendant has not stated a claim for ineffective assistance of counsel where counsel advised the defendant of his right to testify, but did not discuss the advantages and disadvantages of doing so.  See Walker v. United States, 238 F.3d 426 (Table), at *2 (6th Cir. 2000); Kelley v. United States, No. 1:08-CR-51, 2014 WL 2921821, at *16 (E.D. Tenn. June 27, 2014); Young v. United States, No. 3:02-CR-078, 2011 WL 4497869, at *9 (E.D. Tenn. Sept. 27, 2011).  In Walker, the petitioner's argument is similar to Zayac's here:

> Walker does not argue that he was unaware of his right to testify, that his attorney did not consult him about his decision whether or not to testify, or that his attorney intimidated him, threatened him, or otherwise interfered with his decision whether or not to testify.  Rather, Walker merely asserts that counsel did not adequately advise him of the evidentiary value of his testimony.

Walker, 238 F.3d 426 (Table), at *2.  Under such circumstances, the court held that "[t]hese allegations are insufficient to show that counsel's performance was in any way deficient."   Id.; see also id. ("Unaccompanied by coercion, however, legal advice concerning exercise of the right to testify infringes no right.").

---

[8] As explained previously, the court agrees with the Government's assertion that Zayac overstates the significance of the statements made by the court at the charge conference.  The court did not make a "preliminary ruling" on the defense's request for a duress instruction, but rather expressed an unwillingness to make a ruling on the request before hearing the defense's evidence, which defense counsel represented would be forthcoming and would be Zayac's testimony.

However, while it is true that Zayac mischaracterized the court's statements, this overstatement by Zayac is not crucial to the court's decision here because the court assumes, for the sake of its analysis, that trial counsel did not discuss the impact of the testimony at all on the duress charge, rather than merely failing to communicate the court's statements at the charge conference.  That this version, presenting the case in the light most favorable to Zayac, still fails to establish ineffective assistance further underpins the court's decision that an evidentiary hearing would be unnecessary.

Similarly, in <u>Young</u>, the court held that the petitioner failed to state a claim for ineffective assistance of counsel where "his attorney discussed with him his right to testify, but did not discuss the advantages and disadvantages of testifying." <u>Young</u>, 2011 WL 4497869, at *9. Likewise, in <u>Kelley</u>, the court found that counsel's performance was not unreasonable where "counsel advised [the defendant] not to testify without explaining his reasons." <u>Kelley</u>, 2014 WL 2921821, at *16. Zayac's Petition presents an even weaker case for ineffective assistance than those in <u>Young</u> and <u>Kelley</u> because Zayac does not argue that counsel failed to discuss the benefits of testifying or that counsel failed to explain his reasons for the advice he gave Zayac. As stated above, in the colloquy with the court, Zayac represented that counsel did discuss the pros and cons of testifying with him. <u>See</u> Day 5 Tr. at 1200–01. Instead, Zayac merely argues that counsel neglected to discuss a specific benefit or reason for testifying—the impact of his testimony on his potential duress charge. Given that counsel discussed with Zayac his right to testify and the pros and cons of doing so, this omission is insufficient to render counsel's performance objectively unreasonable under the first prong of <u>Strickland</u>.

Furthermore, assuming Zayac's counsel advised him not to testify despite his awareness of the significance of that testimony for a potential duress instruction,[9] such a recommendation "falls squarely within the ambit of trial strategy, and if reasonably made, cannot support an ineffective assistance claim." <u>Hair v. Alves</u>, No. 3:10-CV-01948 (MPS), 2015 WL 7725426, at *6 (D. Conn. Nov. 30, 2015) (quoting <u>U.S. v. Eisen</u>, 974 F.2d 246,

---

[9] This fact is implicit in the briefings, but not stated explicitly. As previously noted, the court has determined nonetheless that an evidentiary hearing is unnecessary because, even assuming the facts as they would be most favorable to Zayac, he has failed to satisfy the first prong of an ineffective assistance claim.

265 (2d Cir. 1992)). For example, as the Government correctly points out, were Zayac to take the stand, he would have been subject to rigorous cross-examination, including impeachment through his four prior inconsistent statements given to investigators, as well as incriminating details, such as his failure to later report the crime to law enforcement and his ultimate possession of the proceeds of the robbery. See Mem. in Opp. at 13. Courts in this District have found such considerations to be justifiable reasons for advising a defendant not to testify. See Smith v. Comm'r of Correction, No. 3:14-CV-00916 (SRU), 2017 WL 3633747, at *13 (D. Conn. Aug. 23, 2017); Hair, 2015 WL 7725426, at *7.

For these reasons, Zayac has failed under the first prong of Strickland to establish a claim for ineffective assistance of counsel. Furthermore, however, even if counsel's performance were objectively unreasonable, Zayac's ineffective assistance claim would still fail because he has not shown prejudice. To prove prejudice, a petitioner must show "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this case, then, Zayac must demonstrate a reasonable probability that (1) had he known about the court's statements, he would have testified; (2) had he testified, his testimony would have been sufficient to advance a duress charge to the jury; and (3) his testimony and the duress charge together would have persuaded the jury.

The Government challenges Zayac's claim of prejudice at each of these steps. First, the Government argues that Zayac was already aware of the court's position on the duress charge because of statements made by the judge in open court before Zayac's decision not to testify. See Mem. in Opp. at 8–11. According to the Government, "Zayac was fully aware the district court was relying on the version of

events he provided previously to investigators in determining whether a duress instruction was to be given" and "that the district court had reservations about whether the record would support such an instruction." Id. at 11. Therefore, despite Zayac's Affidavit to the contrary, the Government argues that being told of the court's statements in chambers would not have been determinative of Zayac's decision to testify. Second, the Government argues that Zayac's testimony, as asserted in his affidavit, would still have been insufficient to justify a duress charge. See id. at 12–13. Finally, the Government argues that Zayac would have been subject to rigorous cross-examination had he testified, such that the jury would not have believed him. See id. at 13. The court focuses its analysis on the Government's last argument.[10]

In cases in which defendants have argued that ineffective assistance of counsel led them to waive their right to testify in error, courts have found no prejudice under the second prong of Strickland where they determined that it would be unlikely for the jury to believe the defendant's testimony. See, e.g., Perez v. United States, 589 Fed. App'x 13, 15 (2d Cir. 2014); United States v. Garcia, 51 Fed. App'x 325, 328–29 (2d Cir. 2002); Botero v. United States, No. CIV. 3:00CV1922(AHN), 2005 WL 1606911, at *2

_____

[10] It is not necessary for the court to resolve either of the first two issues raised by the Government because the Government's third argument is sufficient to find that Zayac would not have been prejudiced by counsel's failure to inform him. As to the Government's first argument, having foregone an evidentiary hearing as unnecessary, the court assumes as true Zayac's statement in his affidavit that: "Had I known that Judge Hall said that she would charge the jury on duress but only upon hearing and evaluating my testimony, I would have testified in my own defense to address the judge's position." Mem. in Supp. Ex. A at ¶ 3. The statements made by the court in his hearing, which were similar to those made at the charge conference, may be reason to doubt the credibility of Zayac's claim, as they put him on notice as to the court's disposition regarding the duress charge. See Day 5 Tr. at 1197–98; see also Crenshaw, 2014 WL 4792651, at *3; Lewis v. Thaler, No. CIV.A. H-09-04014, 2010 WL 2640144, at *9 (S.D. Tex. June 30, 2010). However, it is unnecessary to resolve that issue at this juncture. As to the Government's second argument, the court determines not to decide, as unnecessary, whether Zayac's newest testimony—that he had only 30 seconds to a minute alone, and that Gonzalez had the gun—would be sufficient to justify a duress instruction.

(D. Conn. July 6, 2005); see also Stephens v. Sec'y, Dep't of Corr., No. 8:12-CV-127-T-27TGW, 2015 WL 275808, at *13 (M.D. Fla. Jan. 22, 2015), certificate of appealability denied (July 28, 2015); Crenshaw v. Humphreys, No. 13-C-1313, 2014 WL 4792651, at *5 (E.D. Wis. Sept. 25, 2014).  In such cases, courts have considered the government's ability to impeach the defendant with prior inconsistent statements, the lack of evidence to corroborate the defendant's testimony, and the conflicting testimony of other witnesses to be relevant factors in assessing whether the jury would have credited the defendant's testimony had he testified.  See Garcia, 51 Fed. App'x at 328–29; Stephens, 2015 WL 275808, at *13; Crenshaw, 2014 WL 4792651, at *5.  These courts held therefore that there was no reasonable probability that the outcome would have been different.

In this case, Zayac fails to demonstrate that, had he testified and received the duress instruction, there would have been a reasonable probability that the jury would have believed his testimony and acquitted him based on a theory of duress.  Indeed, he fails to even make this argument explicitly in his briefings.  Instead, he merely argues that his testimony would have been sufficient to advance a duress charge to the jury. See Mem. in Supp. at 9 ("But for his trial counsel's failure to advise Mr. Zayac, Mr. Zayac would have testified and surpassed the sufficiency threshold for the duress instruction to be sent to the jury."); Mem. in Reply at 6 ("Even if Zayac had labored under days of cross-examination, he still would have advanced sufficient facts for a duress instruction to be charged for a jury's deliberation: it would have been for the jury to decide whether Zayac acted under duress, not the government absent a proper charge.").  He does not, however, explain why a jury would have credited his testimony

if given a duress charge.[11]

To the extent that he argues that the failure to advance the duress charge to the jury is itself prejudice, Zayac is mistaken about the Strickland standard. See Mem. in Supp. at 7 ("Additionally, it is prejudicial error for a viable charge not to be sent to the jury."). Strickland defines prejudice as "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Therefore, procedural rights—however important they may be—do not rise to the level of prejudice under Strickland if they do not create a reasonable probability of a different outcome.[12] For example, courts have held that counsel's failure to request a jury instruction for a possible defense does not automatically satisfy prejudice merely because the charge failed to go to the jury; rather, the court must still consider whether the charge could reasonably have changed the outcome of the proceeding. See, e.g., Carranza v. Smith, 121 Fed. App'x 199, 201 (9th Cir. 2005); Cone v. Stegall, 14 Fed. App'x 439, 444 (6th Cir. 2001); Razzaq v. Rowley, No. CIV.A. PJM-08-1331, 2010 WL 4054276, at *8–*9 (D. Md. Oct. 15, 2010). Thus, it is not enough for Zayac to argue that the duress charge would have gone to the jury.

---

[11] In one sentence, he does state, "The prejudice is not only that a duress instruction, concomitant with Zayac's testimony, could have changed the outcome." Mem. in Reply at 6. Statements such as this, however, are insufficient to carry the petitioner's burden of proof because they make a conclusory statement that the outcome would have been changed without explaining how or why. Additionally, Strickland requires not merely that the outcome "could" have been changed, but that there was a reasonable probability that it would have been. See 466 U.S. at 694.

[12] Zayac makes several other claims of prejudice that suffer from the same misunderstanding of Strickland. For example, he argues that "the significant prejudice here is that Zayac was denied the opportunity to participate fully in his defense and denied the right to a fair trial." Mem. in Reply at 6. He also states, "There is extreme prejudice, a fundamental error equivalent to the 'right of trial itself,' when a defendant is absent at a critical stage of the proceedings." Id. He does not state why or how either of these errors, if corrected, would have resulted in his acquittal. For the same reason stated above, none of these claims establish prejudice under Strickland unless the error creates a reasonable probability that the outcome of the proceeding would have been different. See 466 U.S. at 694.

To satisfy his burden of proof, he must further show a reasonable probability that the jury would have been persuaded on that basis.

In addition to Zayac's silence on this point, there is good reason to believe that, in this case, had Zayac testified, his testimony would not have been sufficient to create a reasonable probability of a different outcome. Like the defendants in Botero, Garcia, and Perez, Zayac would have been subject to a grueling cross-examination and impeachment. See Botero, 2005 WL 1606911, at *2; Garcia, 51 Fed. App'x at 328–29; Perez, 589 Fed. App'x at 15; see also Mem. in Reply at 6 ("The Respondent's contention that Zayac's testimony would have subjected him to rigorous cross examination is likely true . . . ."). For one, Zayac would have been impeached by the four prior statements he gave to investigators, each of which differed from each other and from the testimony he now says he would have given at trial. See Zayac, 765 F.3d at 116 ("His account of what transpired on the night of Rivera's murder changed each time . . . ."); cf. Stephens, 2015 WL 275808, at *13 ("While this statement would have conflicted with the testimony of two State witnesses that he identified the drugs in the closed shoe box, it is speculative to assert that the jury would have acquitted him on this basis alone. Resolving conflicting testimony is a question to be determined by the trier of fact."). Zayac asserts in his Affidavit that he would have testified that he lied in his previous statements to the investigators because he feared reprisal from Gonzalez. See Mem. in Supp. Ex. A at ¶ 4. Given that he was no longer under imminent threat, but safely within police custody, at the time that he made those statements, see Zayac, 765 F.3d at 116, it is speculative which, if any, of Zayac's many versions of the events the jury would have accepted.

Furthermore, Zayac cannot point to any independent evidence available to the jury to corroborate what he now asserts would be his testimony. <u>See</u> Mem. in Supp. at 4 ("MR. KOFFSKY: 'We don't have any independent information [on duress] other than our client's testimony and maybe some recordings which the court didn't want us to go into with Ms. DiBuono.'" (quoting Day 3 Tr. at 794)); <u>Crenshaw</u>, 2014 WL 4792651, at *5 ("The court also noted that no evidence outside of his testimony corroborated his version of events."). Additionally, Zayac's defense of duress faces other challenges of credibility, such as the difficulty of explaining how he ended up with the proceeds of the robbery if he acted only under threat from Gonzalez or why he did not go to the police. Taking all of these factors into consideration, Zayac has not shown a reasonable probability that a jury would have believed his testimony and therefore has not carried his burden of proving prejudice.

In sum, Zayac has satisfied neither prong of <u>Strickland</u> and is not entitled to habeas relief for ineffective assistance of counsel on this ground.

## C.     Failure to Call Witnesses

Finally, Zayac argues that his trial counsel failed to provide effective assistance of counsel because they failed to call three witnesses who would have rebutted the government's theory of motive. <u>See</u> Mem. in Supp. at 9–10. According to Zayac, the government's theory of motive turned on the fact that Zayac did not have enough money to purchase the amount of marijuana contemplated in the deal and that he stood to gain significantly more money by the robbery. <u>See</u> <u>id.</u> Zayac argues that three witnesses, Ernesto DePiano, Joseph Milo, and Carlo Petrazzi, would have testified "that they knew that Petitioner sold large amounts of marijuana and had access to assets

consistent with large-scale marijuana dealing." Id. at 9.[13] However, Zayac's counsel never contacted them or called them to testify. See id.

As stated above, in order to prevail on a claim for ineffective assistance of counsel, Zayac must show that trial counsel's performance fell below an objective standard of reasonableness and resulted in actual prejudice. See Strickland, 466 U.S. at 687–88. The Second Circuit has instructed that courts should be "especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005). "The decision not to call a particular trial witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." Id. (quoting United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam) (alteration in original)). "Thus, counsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." Id. (quoting United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000)). However, such a decision "must be grounded in some strategy that advances the client's interests." Eze v. Senkowski, 321 F.3d 110, 129 (2d Cir. 2003).

In this case, "the record provides a legitimate justification" for Zayac's trial

---

[13] Zayac also notes in his Memorandum that the three witnesses "never saw or knew Petitioner to possess a firearm or be the cause of any violence." Mem. in Supp. at 10. This sentence, however, is Zayac's only mention of this aspect of the witnesses' testimony, and he does not develop any argument as to whether or how counsels' failure to call the witnesses to testify to his nonviolence would amount to ineffective assistance of counsel. Rather, his argument is focused on counsel's failure to call these witnesses to rebut the government's theory of motive. See id. at 9–10. Thus, the court need not consider an argument not advanced by the petitioner. Even if the court were to consider the witnesses' testimony as to Zayac's nonviolence, however, counsel's failure to present such testimony would not constitute ineffective assistance of counsel because Zayac has made no showing of prejudice. He has not argued, for example, that there is a reasonable probability that the jury would believe any of these witnesses or that, even if believed, such testimony would change the outcome of the proceeding.

counsel's decision not to call the three witnesses Zayac now identifies.  See Greiner, 417 F.3d at 323.  Trial counsel could reasonably have determined that the witnesses' testimony that Zayac was "heavily involved in selling quantities of marijuana" and at one time possessed $100,000 in cash would have painted a damaging picture of Zayac to the jury.  See Mem. in Supp., Exs. B, C, D.  Although the facts already indicated that Zayac was participating in a drug transaction at the time of the events in question, the jury may have formed a more negative view of him knowing that he was a big-time drug dealer rather than a low-level courier participating in a one-time sale.  Thus, counsel could have reasonably concluded that the witnesses' testimony would have done more harm than good, and such a decision was "within the range of acceptable strategic and tactical alternatives."  See Luciano, 158 F.3d at 660.

Accordingly, Zayac has not satisfied the first prong of Strickland and is therefore not entitled to habeas relief on this ground.[14]  Additionally, even if trial counsel was unreasonable in not calling the three witnesses Zayac has identified, Zayac's claim nonetheless fails because he has not established actual prejudice.  Zayac must show a reasonable probability that the trial outcome would have been different had counsel called these witnesses.  See Strickland, 466 U.S. at 688.  Zayac, however, has offered no reason to believe that the jury would have found these witnesses credible or that the

---

[14] The court notes that, while Zayac's Memorandum in Reply can be read to include a request for an evidentiary hearing, he identifies disputed issues of fact only with respect to his first argument for ineffective assistance of counsel, i.e. that counsel failed to inform him of statements made at the charge conference.  See Mem. in Reply at 2–4.  He does not identify disputed issues regarding the failure to call witnesses, nor does he make any arguments with respect to an evidentiary hearing on this ground.  See id.  Additionally, even had he so requested, the court is not required to provide an evidentiary hearing because Zayac has not established a plausible claim for ineffective assistance of counsel for failure to call the three witnesses in question.  See United States v. Tarricone, 996 F.2d 1414, 1418 (2d Cir. 1993) ("To prevail on his motion for a hearing, [the plaintiff] must establish that he has a 'plausible' claim for ineffective assistance of counsel.").

testimony would have been central enough to the case to produce a different verdict, especially in light of the other evidence presented against him at trial.  See Krasniqi v. United States, 195 F. Supp. 3d 621, 634 (S.D.N.Y. 2016), certificate of appealability denied, No. 16-3212, 2017 WL 4174941 (2d Cir. Feb. 14, 2017).  Instead, he merely argues conclusorily that "the jury would have had critical evidence to evaluate the totality of the government's case and thereby acquit Mr. Zayac."  Mem. in Supp. at 10. This statement alone is insufficient to meet the prejudice prong of Strickland.

Thus, Zayac has satisfied neither prong of Strickland, and his claim for relief on this ground of ineffective assistance of counsel is also denied.

## V.    CONCLUSION

Zayac has failed to establish a plausible claim that his due process rights were violated or that his trial counsel was ineffective.  In addition, there are no material facts in dispute: even taking all of Zayac's factual assertions as true and drawing all inferences in his favor regarding factual questions not answered in the record, Zayac's claims still fail.  For these reasons, the court exercises its discretion to **DENY** Zayac's request for a hearing.

Furthermore, for the reasons articulated above, the court **DENIES** Zayac's Motion to Vacate on his due process argument and both his ineffective assistance of counsel arguments.

Finally, because Zayac has not made a "substantial showing" of a denial of a constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of January, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge